PEOPLE v. ROTHSTEIN.

(Supreme Court, Appellate Division, First Department.   June 10, 1904.)

1. FALSE PRETENSES—ORAL REPRESENTATIONS—PURCHASER'S FINANCIAL ABIL-
   ITY.
        Where defendant, who was admittedly unable to pay for certain cloth
   ordered from prosecutor, in order to obtain the same represented to pros-
   ecutor that he had an order from a responsible mercantile corporation,
   which he named, for 6,000 cloaks, to be made from the cloth ordered, and
   that, if prosecutor would accept his order for the cloth, he would assign
   the bills payable by the corporation as soon as shipments of the cloaks
   were made, to secure payment for the cloth, and prosecutor, in furnishing
   the cloth, relied entirely on defendant's false representations that he had
   such orders for cloaks, and not on any representation as to defendant's
   pecuniary ability to pay for the cloth, defendant's false pretenses were not
   within Pen. Code, § 544, declaring that a purchase of property by means
   of false pretenses relating to the purchaser's ability to pay is not criminal
   unless in writing and signed by the party to be charged.
        Hatch, J., dissenting.

Appeal from Court of General Sessions, New York County.

Louis J. Rothstein was convicted of grand larceny in the first de-
gree for obtaining goods under false pretenses, and he appeals.   Af-
firmed.

See 85 N. Y. Supp. 1076.

Argued    before   HATCH,    McLAUGHLIN,    PATTERSON,
O'BRIEN, and LAUGHLIN, JJ.

Elias B. Goodman, for appellant.

Howard S. Gans, for the People.

O'BRIEN, J.   The property alleged to have been obtained under
false pretenses comprised 18 pieces of cloth known as "covert cloth,"
which the defendant obtained by way of purchase from merchants
in the city of New York.   The false representation consisted of a
representation made by the defendant to the managing partner of
the firm that he had an order from a large, well-known, and respon-
sible mercantile corporation, which he named, for 6,000 cloaks, to be
made of covert cloth, and that, if the firm would accept his order for
the cloth, he would assign the bills payable by the mercantile corpora-
tion to the copartnership as soon as shipments of the cloaks were
made.   The evidence was sufficient to justify the jury in finding that,
in reliance upon this representation and this arrangement, the sellers
were induced to have the goods manufactured by the mill and de-
livered to the defendant.   The principal question presented upon this
appeal grows out of the defendant's contention that the representa-
tion in this case is governed by section 544 of the Penal Code, which
provides as follows:

"Sec. 544. A purchase of property by means of a false pretense is not
criminal where the false pretense relates to the purchaser's means or ability
to pay, unless the pretense is made in writing and signed by the party to
be charged."

The question presented, therefore, is whether the representation
in the case at bar was as to the defendant's "means and ability to

pay," or whether it was a representation as to the existence of a source extraneous to the defendant from which payment or security was to be had for the goods which the sellers were to deliver to the defendant. Upon the application for a certificate of reasonable doubt, which was granted by one of the justices of the Supreme Court, the conclusion was reached that such a representation, in order to be indictable, must be in writing, under the provisions of the Penal Code. People v. Rothstein, 42 Misc. Rep. 123, 85 N. Y. Supp. 1076. The precise question here involved has never been passed upon by an appellate court or by the Court of Appeals in this state, and we should be inclined to accept the reasoning of the learned judge at Special Term in granting the certificate were it not for two considerations, which may be briefly referred to.

The first is that the learned judge did not, in our view, give sufficient weight to the circumstance that in extending the credit the sellers did not rely upon a representation as to the ability of the defendant to pay, but upon his statement that he had a contract to sell 6,000 cloaks to a responsible corporation, and that, immediately upon shipments of the cloaks, the bills therefor against that corporation were to be assigned to the sellers of the cloth, who were thus induced to have the cloth made at the mill and delivered to the defendant. It cannot be said, therefore, that they relied on a representation as to defendant's ability to pay, but relied upon his statement that they would receive as security for payment the bills payable by the large and responsible mercantile corporation represented as being the purchaser of the cloaks.

The second consideration is the argument deducible from a decision of the highest court of Massachusetts in a case in which a provision of the Public Statutes of that state, almost identical with the provision in our own Penal Code, was involved. The authority referred to is Commonwealth v. Meserve, 154 Mass. 65, 27 N. E. 997, wherein the court examined an indictment in five counts for a conspiracy to obtain goods by false pretenses. The indictment alleged that the defendants, M. & F., had unlawfully conspired with K. to defraud a corporation named out of certain building material under the color of a pretended contract with K. under the assumed name of B. and the corporation for furnishing the same and putting it into a building for K., and upon his credit under such name, by means of the false pretenses to be made to the corporation by M. that K. was B., a man of wealth, and under that name was erecting a building which he owned with the land under it, and needed such material therefor, and that K., under that name, had given M. authority to make the contract on his behalf and under that name with the corporation, and intended to pay for such material and for putting in the same whenever the payment for the same should become due. In the opinion it was said:

"In the fifth count one of the false pretenses set forth as contemplated in the alleged conspiracy was that 'Kennedy, so to be represented as George Brown as aforesaid, had recently theretofore sold seven thousand dollars worth of real estate * * * in said state of New Hampshire, and had invested the proceeds thereof in property in said Boston.' The judge in-

structed the jury that this was good, if proved as charged. The ground of objection urged by the defendants is that this was a representation or pretense as to Kennedy's means or ability to pay, which must be in writing, under Pub. St. 1882, c. 203, § 59. The judge had already instructed the jury fully, in reference to the first count, that pretenses that he was rich, that he owned real estate in New Hampshire, that this real estate was valuable, and that he was interested in the manufacture of bricks in New Hampshire, were of such a character that they must be in writing; but that a representation that he was shifting his property from New Hampshire to Massachusetts might have another aspect, and that it might be found to be equivalent to a representation that he was so engaged in such transactions that he had occasion for the goods which he sought to obtain. The instruction now objected to was, in effect, a brief repetition of what had been said before in reference to the various pretenses set forth in the first count, and must have been understood as subject to the same qualifications which had already been fully explained. The pretense in question was not merely a pretense as to Brown's means or ability to pay, but it was a pretense which might well be considered to relate to the situation of the property and his purposes in reference to it, so as to be relevant to the alleged conspiracy to cheat."

Passing from that case to the one at bar, it will be noticed that here the representation that the specific cloth was to be used in executing a particular order, that there was such an order, and that the valuable contract which the defendant falsely pretended to have was to be pledged as security, was the inducing cause of the sale. We think, therefore, that there is much force in the suggestion that, to hold the representation to be merely one as to the defendant's ability to pay, would eliminate entirely the substitution of the known security of a large mercantile corporation which was represented as giving the order, and which was to pay for the goods as shipped, and whose contract the defendant agreed to assign to secure the payment. We think that the following illustration employed by the learned district attorney in his argument is pertinent and forceful in pointing out the distinction between a representation which induced credit, based upon the means or ability of the purchaser to pay, and a representation of a situation or the delivery of a pledge or security which substituted for the purchaser some extraneous or outside source of payment:

"If one were to produce jewelry of great value, and to assert that he was the owner of that jewelry, and would deposit that jewelry as security for a loan to him, and upon that representation and that deposit of the jewelry had procured a loan, and as matter of fact the jewelry was not his, and he had no right to pledge it, there could be no doubt that the false representation that the jewelry was his would be an indictable false representation, while, of course, the inducing cause of the loan would, in a sense, be the confidence in the defendant's ability to pay, resulting from his representation that the jewelry was his."

What is, we think, determinative in this case, is that the copartnership was not induced to deliver the goods upon a representation that the defendant was able to pay for them, because he did not claim to have the means to do so, but that the goods were delivered to him upon the representation that payment therefor was assured by the assignment to the firm of bills payable by the well-known and responsible mercantile corporation which the defendant said had contracted for 6,000 cloaks to be made of the particular cloth furnished. It was admitted that defendant had no such order from the large cor-

poration of financial ability named by defendant, and; there being sufficient evidence to prove the elements of the crime, we think there was sufficient to support the verdict of the jury.

The judgment of conviction of obtaining goods under false pretenses should therefore be affirmed. All concur, except HATCH, J., who dissents.

HATCH, J. I dissent from the affirmance of the judgment in this case, and vote for reversal, for the reason stated by Mr. Justice Gaynor in People v. Rothstein, 42 Misc. Rep. 123, 85 N. Y. Supp. 1076, delivered upon granting the stay of proceedings herein.